# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JESSIE HAYES,

Defendant-Appellant.

FOR PUBLICATION
March 27, 2018
9:00 a.m.

No. 339543
Oakland Circuit Court
LC No. 1990-097706-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONYELLE MICHAEL BLACK,

Defendant-Appellant.

No. 339544
Oakland Circuit Court
LC No. 1988-083715-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEMAL TIPTON,

Defendant-Appellant.

No. 339547
Oakland Circuit Court
LC No. 1987-078538-FC

---

Before: K. F. KELLY, P.J., and MURPHY and RIORDAN, JJ.

MURPHY, J.

Defendants appeal by leave granted the opinion and order by the trial court rejecting their efforts to avoid resentencing hearings on whether they should again be sentenced to life in prison without parole for murders committed as juveniles, as opposed to being resentenced to a term of years. We affirm.

-1-

Over 25 years ago, and as based on the verdicts, the three defendants, as juveniles, committed first-degree murder, MCL 750.316, along with other offenses, and were sentenced to life imprisonment without the possibility of parole, as mandated by Michigan law at the time. The crimes were committed and defendants were tried in Oakland County Circuit Court. Current Oakland County Prosecutor, Jessica R. Cooper (the prosecutor), was the circuit court judge who presided over defendants' trials, two of which were jury trials and one a bench trial, and she later imposed their life-without-parole sentences.

In *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), the United States Supreme Court held that the punishment of life in prison absent the possibility of parole for a defendant who was under the age of 18 at the time of the sentencing offense violates the Eighth Amendment's prohibition against cruel and unusual punishments. The *Miller* Court did not indicate whether its decision was to be retroactively applied to closed cases involving juvenile offenders. In light of *Miller*, the Michigan Legislature enacted MCL 769.25, which provides a procedural framework for sentencing juvenile offenders who have committed offenses punishable by life imprisonment without the possibility of parole; this provision applied to pending and future cases. Anticipating the possibility of *Miller*'s retroactive application for closed cases, the Legislature also enacted MCL 769.25a, which would be triggered if our Supreme Court or the United States Supreme Court were to hold that *Miller* applied retroactively. And subsequently, in *Montgomery v Louisiana*, __ US __; 136 S Ct 718; 193 L Ed 2d 599 (2016), the United States Supreme Court held that the rule announced in *Miller*, which was a new substantive constitutional rule, was retroactive on state collateral review. Accordingly, MCL 769.25a took effect.

MCL 769.25a(4) sets forth the governing procedure that is relevant in the instant cases, providing as follows:

> (a) Within 30 days after the date the supreme court's decision [making *Miller* retroactive] becomes final, the prosecuting attorney shall provide a list of names to the chief circuit judge of that county of all defendants who are subject to the jurisdiction of that court and who must be resentenced under that decision.

> (b) *Within 180 days after the date the supreme court's decision becomes final, the prosecuting attorney shall file motions for resentencing in all cases in which the prosecuting attorney will be requesting the court to impose a sentence of imprisonment for life without the possibility of parole.* A hearing on the motion shall be conducted as provided in section 25 of this chapter.

> (c) If the prosecuting attorney does not file a motion under subdivision (b), the court shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years and the minimum term shall be not less than 25 years or more than 40 years. [Emphasis added.]

In compliance with MCL 769.25a(4)(a) and its deadline, the prosecutor's office provided a list to the chief judge of the names of 49 individuals who were subject to the jurisdiction of the court and who had to be resentenced under *Montgomery*. In compliance with MCL 769.25a(4)(b) and its deadline, the prosecutor's office filed motions for resentencing with respect to 44 of the 49 identified individuals, including the three defendants here, requesting the court to

impose a sentence of imprisonment for life without the possibility of parole. More than nine months after the resentencing motions were filed, more than a year after defendants each obtained court-appointed counsel, and well beyond the 180-day window in MCL 769.25a(4)(b), defendants filed motions to disqualify the prosecutor and her entire office, asserting a violation of Michigan Rule of Professional Conduct (MRPC) 1.12.[1] Defendants challenged the failure of the prosecutor to initiate self-imposed recusal in the determination or efforts to have defendants again sentenced to mandatory life imprisonment, premised on a conflict of interest, public policy, and constitutional concerns given that the prosecutor served as the trial and sentencing judge on the three cases. Defendants also pointed to stances unfavorable to juvenile lifers expressed by the prosecutor. Defendants maintained that the prosecutor, as well as her office, were precluded from being involved in the cases and that the prosecutor's motions requesting sentences of life without parole must be struck, which would effectively result in defendants receiving a term of years, MCL 769.25a(4)(c).

While defendants' motions were pending, the prosecutor submitted a request to the Michigan Attorney General, seeking appointment of a special prosecutor to handle the three cases in accordance with MCL 49.160,[2] which request was accepted and approved. The Attorney General, exercising independent judgment, decided not to withdraw the prosecutor's

---

[1] MRPC 1.12(a) provides:

> Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator, or law clerk to such a person, unless all parties to the proceeding consent after consultation.

[2] MCL 49.160 provides in part:

> (1) If the prosecuting attorney of a county determines himself or herself to be disqualified by reason of conflict of interest or is otherwise unable to attend to the duties of the office, he or she shall file with the attorney general a petition stating the conflict or the reason he or she is unable to serve and requesting the appointment of a special prosecuting attorney to perform the duties of the prosecuting attorney in any matter in which the prosecuting attorney is disqualified or until the prosecuting attorney is able to serve.

> (2) If the attorney general determines that a prosecuting attorney is disqualified or otherwise unable to serve, the attorney general may elect to proceed in the matter or may appoint a prosecuting attorney or assistant prosecuting attorney who consents to the appointment to act as a special prosecuting attorney to perform the duties of the prosecuting attorney in any matter in which the prosecuting attorney is disqualified or until the prosecuting attorney is able to serve.

motions for mandatory life sentences and has proceeded as the prosecutorial entity pursuing such sentences. A hearing was conducted on defendants' disqualification motions. In a written opinion and order, the trial court determined that the prosecutor effectively conceded disqualification by making the request to the Attorney General under MCL 49.160; therefore, the court found it unnecessary to specifically rule on the issue of disqualification. The trial court still spent considerable time examining and discussing the disqualification issue for purposes of resolving whether the prosecutor's motions for mandatory life imprisonment should be struck or, stated otherwise, whether the disqualification should operate retroactively, eviscerating the timely motions for mandatory life imprisonment and making it impossible for the Attorney General, at this late date, to file motions in compliance with MCL 769.25a(4)(b). For a variety of reasons, the trial court concluded that the prosecutor's motions should not be struck and that the Attorney General had the authority to investigate and re-evaluate the prosecutor's motions, including the power to withdraw the motions. Defendants now appeal the court's ruling.

We conclude that MCL 49.160 dictates the outcome of these cases. We review de novo issues of statutory construction. *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001). MCL 49.160 was the procedural mechanism employed in these cases by which the prosecutor recused or disqualified herself and her office from further participation in the cases. The ultimate question is whether the disqualification or recusal requires the striking of the prosecutor's earlier and timely motions to seek sentences of life imprisonment without the possibility of parole relative to the three defendants.

MCL 49.160(2) provides, in pertinent part, that "the attorney general may elect *to proceed* in the matter." (Emphasis added.) To "proceed" means to go forward, to continue, to go on, to move along, or to advance. *Merriam-Webster's Collegiate Dictionary* (11th ed); see also *People v Perkins*, 473 Mich 626, 639; 703 NW2d 448 (2005) ("We may consult dictionary definitions of terms that are not defined in a statute."). Accordingly, under MCL 49.160(2), when the Attorney General, upon request, intervened in the three cases and took over the prosecutions in regard to sentencing, the Attorney General did so for purposes of going forward or continuing the existing cases, wherein the motions for mandatory life sentences had already been timely filed. The procedural history of the case up to that point in time was not wiped out by the transfer of prosecutorial power from the prosecutor to the Attorney General.

Defendants' main concern was the appropriateness of the prosecutor and her office playing any role in making a sentencing decision under MCL 769.25a(4)(b), considering the prosecutor's history as the presiding judge at defendants' trials and sentencing hearings and the statements made by the prosecutor outside of a court setting. However, the subsequent recusal of the prosecutor and her office and the involvement of the Attorney General effectively rendered defendants' concern inconsequential and irrelevant. We reach this conclusion given that the Attorney General, upon accepting the cases, became "vested with all of the powers of the prosecuting attorney . . ., including the power to investigate and initiate charges," MCL 49.160(3). And the Attorney General thus had the full authority to withdraw the previously filed motions seeking life imprisonment without the possibility of parole; however, on contemplation of each of the cases and the surrounding circumstances, the Attorney General decided to proceed on the same course as the prosecutor. Defendants, therefore, have received the unbiased and un-conflicted review that they demand, and a judge, or perhaps a jury, will later decide defendants' sentences. Had recusal and the acceptance of the cases by the Attorney General occurred during the 180-day period set forth in MCL 769.25a(4)(b), with the Attorney General making the initial

determination to seek mandatory life imprisonment consistent with its current position, defendants would be, as they are now, awaiting resentencing hearings. Under the procedural circumstances, defendants have simply not suffered any harm. See *In re Osborne*, 459 Mich 360, 368-369; 589 NW2d 763 (1999) (prosecutor at termination hearing previously represented parent subject to the termination proceeding absent objection or notice of the problem by the trial court; our Supreme Court stated that "we are not prepared to sweep away the 1996 and 1997 proceedings in the absence of demonstrated harm").

Affirmed.

/s/ William B. Murphy
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan